## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

**BRANCH BANKING AND TRUST COMPANY,**

      Plaintiff,

v.

**ENVIRONMENTAL TECHNOLOGIES, INC., EUGENE C. DUNWODY JR., Individually, CAROLE M. LOVETT, Individually, and L. ROBERT LOVETT, Individually**,

      Defendants.

Civil Action No. 5:12-CV-115 (HL)

## ORDER

This case is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 27). Defendants have filed a response, and Plaintiff has filed a reply. After reviewing the briefs, depositions, and other evidence, the Court grants Plaintiff's Motion for Summary Judgment.

## I.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Local Rule 56

In accordance with Local Rule 56, Plaintiff filed a statement of material facts to which it contends there is no genuine dispute. (Doc. 27-2). As required by Local Rule 56, each fact statement is supported by a specific citation to the record. See M.D. Ga. L.R. 56.

Local Rule 56 requires the respondent to respond to each of the movant's numbered material facts. "All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56. In their response to Plaintiff's statement of material facts, Defendants deny or disagree with many of Plaintiff's statements but do not specifically controvert the statements by specific citation to the record. See Responses No. 2, 8, 11, 13, 17, 18, 23, 27, and 28. Therefore, in accordance

with Local Rule 56, these particular facts contained in Plaintiff's statement are deemed admitted.[1]

Even though certain of Plaintiff's submitted facts are deemed admitted, Plaintiff "continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008). The Court must "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Id. at 1269 (quotation and internal quotation marks omitted). The Court has so reviewed the record, and viewed in the light most favorable to Defendants, finds the facts for purposes of summary judgment to be as follows.

### B.    ETI Promissory Note

Defendant Environmental Technologies, Inc. ("ETI") made a promissory note to Plaintiff dated March 18, 2004 in the principal amount of $650,000 (the "ETI Note"). The ETI Note provided for repayment of principal and interest in monthly installments. Defendants Eugene C. Dunwody Jr., Carole M. Lovett, and

---

[1] Defendants also contend that certain material facts set forth by Plaintiff are "incomplete" but fail to cite to the record and provide support for their responses. *See, e.g.,* Responses No. 4 and 5. Defendants also state in at least two responses that they "feel" that the statement asserted by Plaintiff is incomplete, but they do not explain how the statements are incomplete or direct the Court to evidence in the record which would provide the complete statement.

In addition, Defendants did not attach their own statement of material facts to which they contend there exists a genuine issue to be tried. *See* M.D. Ga. L.R. 56.

L. Robert Lovett each signed a Guaranty Agreement dated March 18, 2004 (the "ETI Guaranty Agreements") by virtue of which they guaranteed the payment of ETI's obligations and liabilities, whether then existing or thereafter arising.

The loan proceeds were for the renovation of a commercial retail building and multi-family dwelling on Poplar Street in Macon, Georgia. ETI also signed a Loan Agreement dated March 18, 2004 setting forth the terms and conditions under which Plaintiff would fund the project. From March 2004 through September 2004, ETI drew loan proceeds in the total amount of $475,614.76. Only one of ETI's payments on the ETI Note was made on time in 2004.[2] Defendants subsequently requested that the principal amount of the ETI Note be reduced to match the amount actually drawn and to lower the monthly payments. Accordingly, the ETI Note was modified on January 6, 2005 and reduced to the principal amount of $468,531.01.

Over the subsequent years, the ETI Note was modified on numerous occasions to extend the maturity date and to reflect a new principal amount. The ETI Note was modified as follows[3]:

---

[2] Defendants dispute this statement and contend that Deposition Exhibit 29 shows regular, timely payments. However, Defendants have not provided the Court with a copy of this exhibit.

[3] The new principal amount reflected the balance due on the ETI Note on that particular time.

| Date of Modification | Principal Amount |
| --- | --- |
| June 9, 2005 | $463,990.10 |
| October 26, 2009 | $426,797.67 |
| January 26, 2010 | $422,597.67 |
| August 12, 2010 | $420,125.16 |
| December 10, 2010 | $420,125.16 |

Along with the last modification, Defendants Dunwody and Robert Lovett each signed a Guaranty Agreement dated December 10, 2010, again guaranteeing payment of the ETI Note.

The ETI Note matured on June 10, 2011. Neither ETI nor the individual Defendants paid the indebtedness due under the ETI Note upon maturity. The ETI Note went into default. Plaintiff delivered an Acceleration Notice dated September 28, 2011 demanding immediate payment of all principal and interest owing on the ETI Note.

The ETI Note provides that the Defendants shall be liable for all costs of collection and reasonable attorney's fees if the note is placed with an attorney for collection. The Acceleration Notice notified Defendants that the provisions of the ETI Note regarding payment of attorney's fees would be enforced if the full amount of principal and interest due on the note was not paid within ten days

from Defendants' receipt of the Acceleration Notice. Defendants made no payments in response to the Acceleration Notice.

According to Plaintiff, the following amounts are due on the ETI Note: principal in the amount of $420,125.16; bank fees in the amount of $9,778.38; accrued interest in the amount of $66,257.24 as of April 12, 2013; attorney's fees in the amount of $48,663.24 as of April 12, 2013; per diem interest of $87.5260 per day for each day after April 12, 2013; and per diem attorney's fees for each day after April 12, 2013.

### C.    Lovett Promissory Note

Defendants Robert and Carole Lovett (the "Lovetts") made a promissory note to Plaintiff dated April 7, 2006 in the principal amount of $90,000 (the "Lovett Note"). The Lovett Note provided for repayment of principal and interest in monthly installments. The Lovetts received the entire $90,000 on or about April 7, 2006.

The Lovett Note was modified on several occasions to extend the maturity date and to reflect a new principal amount. The Lovett Note was modified as follows[4]:

---

[4] The new principal amount reflected the balance due on the Lovett Note on that particular time.

| Date of Modification | Principal Amount |
|---|---|
| April 27, 2009 | $73,926.50 |
| July 23, 2009 | $72,613.78 |
| October 26, 2009 | $70,091.67 |
| January 26, 2010 | $70,657.80 |
| September 12, 2010 | $69,001.85 |
| December 12, 2010 | $68,261.85 |

The Lovett Note matured on June 10, 2011. The Lovetts did not pay the indebtedness due under the Lovett Note upon maturity, and the note went into default. Plaintiff delivered an Acceleration Notice dated August 15, 2011 demanding immediate payment of all principal and interest owing on the Lovett Note.

The Lovett Note provides that the Lovetts shall be liable for all costs of collection and reasonable attorney's fees if the note is placed with an attorney for collection. The Acceleration Notice notified the Lovetts that the provisions of the Lovett Note regarding payment of attorney's fees would be enforced if the full amount of principal and interest due on the note was not paid within ten days from the Lovetts' receipt of the Acceleration Notice. The Lovetts made no payments in response to the Acceleration Notice.

According to Plaintiff, the following amounts are due on the Lovett Note: principal in the amount of $66,421.85; bank fees in the amount of $1,242.44; accrued interest in the amount of $11,828.33 as of April 12, 2013; attorney's fees in the amount of $7,850.02 as of April 12, 2013; per diem interest of $16.1442 per day for each day after April 12, 2013; and per diem attorney's fees for each day after April 12, 2013.

## III.   ANALYSIS

"A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." Core LaVista, LLC v. Cumming, 308 Ga. App. 791, 795, 709 S.E.2d 336, 340 (2011) (quotation omitted); Smith v. Gordon, 266 Ga. App. 814, 814, 598 S.E.2d 92, 93 (2004) ("A creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense."); Gentile v. Bower, 222 Ga. App. 736, 738, 477 S.E.2d 130, 133 (1996) ("In an action on a promissory note, a claimant may establish a prima facie right to judgment as a matter of law by producing the promissory note and showing that it was executed.") Similarly, a party seeking to enforce a guaranty agreement establishes a prima facie case by showing that the note and guaranty agreement

were executed and that the maker of the note defaulted thereunder. <u>Shropshire</u> <u>v. Alostar Bank of Commerce</u>, 314 Ga. App. 310, 315, 724 S.E.2d 33, 38-39 (2012).

Defendants do not dispute that Plaintiff has established a prima facie case of liability under the ETI Note, the ETI Guaranty Agreements, and the Lovett Note, and the Court finds that Plaintiff has in fact established a prima facie case of liability. Plaintiff has produced the executed Notes and Guaranty Agreements and has produced evidence demonstrating that Defendants are in default. Defendants have presented no evidence to rebut Plaintiff's showing that they are currently in default. Thus, the burden of production has shifted to Defendants to produce or point to evidence in the record which establishes an affirmative defense. <u>Big Sandy Partnership, LLC v. Branch Banking & Trust Co.</u>, 313 Ga. App. 871, 872, 723 S.E.2d 82, 84 (2012). Defendants cannot rest on allegations in their pleadings to establish their affirmative defenses, but rather must come forward with or point to specific facts in the record to establish the affirmative defenses. <u>Id.</u> (citing <u>Southeast Reducing Co. v. Wasserman</u>, 229 Ga. App. 1, 4-5, 493 S.E.2d 201 (1997)).

## A. Defenses to Liability - the ETI Note and the ETI Guaranty Agreements

The Court reads Defendants' response to Plaintiff's motion as raising six affirmative defenses with respect to the ETI Note and the ETI Guaranty

Agreements. First, Defendants contend that the ETI Guaranty Agreement executed by Carole Lovett is not valid or enforceable. Second, Defendants contend there was a failure of consideration for the ETI Note. Third, Defendants contend that because Plaintiff did not lend additional money to Defendants, they are excused from repaying the amounts owed. Fourth, Defendants contend that Plaintiff breached the covenant of good faith and fair dealing. Fifth, Defendants contend that Plaintiff failed to mitigate its damages under the ETI Note. Sixth, Defendants contend that Plaintiff has waived its rights under the loan documents. The Court addresses each affirmative defense in turn.

### 1.    Validity and Enforceability of Carole Lovett's Guaranty Agreement

There is no dispute that Carole Lovett signed a Guaranty Agreement in connection with the ETI Note. She admitted in her deposition that she did not read her ETI Guaranty Agreement before signing it, and maintains that she did not intend to personally guarantee the ETI Note. However, "[a] person who signs a contract is imputed with knowledge of the contents of that contract. Specifically, everyone is charged with the responsibility of reading and knowing the contents of a contract which he signs." D.L. Lee & Sons, Inc. v. ADT Sec. Sys., Mid-South, Inc., 916 F.Supp. 1571, 1578 (S.D. Ga. 1995) (citing Bradley v. Swift & Co., 93 Ga. App. 842, 93 S.E.2d 364 (1956)); Parker v. Fidelity Bank, 151 Ga. App. 733, 733, 261 S.E.2d 465, 466 (1979) (stating that the parties are presumed to have

read the instruments in question and to have understood their contents). Carole Lovett executed an ETI Guaranty Agreement, and therefore is imputed with the knowledge of the contents of the contract. Not reading the contract and not intending to be bound do not relieve Carole Lovett from liability under her ETI Guaranty Agreement.[5]

Defendants also contend that Plaintiff's representative told them that Carole Lovett was released from her ETI Guaranty Agreement, and therefore she cannot be held liable under it. However, this contention does not relieve her of her obligations. "Parole evidence is not admissible to vary or contradict the unconditioned promise to pay provided in a note or guaranty agreement. The cases are legion that a complete and unambiguous instrument cannot be varied or contradicted by reliance upon inconsistent parol statements." Brooks v. Gwinnett Cmty. Bank, 311 Ga. App. 806, 807, 717 S.E.2d 647, 648 (2011) (quoting Kennerly v. First Colony Bank, 205 Ga. App. 352(1), 422 S.E.2d 243 (1992)). The ETI Guaranty Agreement unconditionally obligated Carole Lovett for payment of the ETI Note. The agreement expressly provides that:

> [T]he undersigned . . . hereby absolutely and unconditionally guarantees to Bank and its successors and assigns the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary . . . of [ETI], at any time, now or

---

[5] While the Court is sympathetic to Carole Lovett's plight, as she apparently only signed the ETI loan documents because her husband told her to, that is not a legal excuse that would discharge her from liability.

> hereafter, incurred with or held by Bank, together with interest, as and when the same become due and payable, whether by acceleration or otherwise, in accordance with the terms of any such notes, drafts, debts, obligations or liabilities or agreements evidencing any such indebtedness, obligation or liability including all renewals, extensions and modifications thereof.

The ETI Guaranty Agreement further provides that the "Guaranty is unlimited and applies to all indebtedness of [ETI], whether now existing or hereafter arising." Carole Lovett further agreed that "this guaranty is enforceable against the undersigned in accordance with its terms." Carole Lovett cannot now seek to vary the terms of this unambiguous contract by reliance on inconsistent oral statements.

In any event, a release from a promise to answer for another's debt must be in writing. "Pursuant to O.C.G.A § 13-5-30(2), the personal guarantee agreement had to be and was executed in writing. As the contract of guaranty had to be in writing under the Statute of Frauds, 'so likewise, under the general rule, any proposed modification thereof, to be effective, must also have been in writing.'" Hendricks v. Enter. Fin. Corp., 199 Ga. App. 577, 579, 405 S.E.2d 566, 568 (1991) (quotation and citations omitted). No written agreement was ever entered into between Plaintiff and Carole Lovett releasing, canceling, or

otherwise terminating her ETI Guaranty Agreement. Thus, the ETI Guaranty Agreement signed by Carole Lovett remains enforceable against her.[6]

## 2.   Failure of Consideration

Failure of consideration is an affirmative defense that the maker of a promissory note can plead in a suit on a promissory note. <u>Gentile</u>, 222 Ga. App. at 739. This defense generally arises when the maker of the promissory note contends that he did not receive the consideration for which the note was given. <em>See</em> <u>id.</u> at 739.

Both Dunwody and Robert Lovett admitted in their depositions that ETI received money from Plaintiff. Unlike in <u>Fink v. Hobbs</u>, No. 1:02-CV-202-2 (WLS), 2005 WL 240606, at *1 (M.D. Ga. Sept. 28, 2005), cited by Defendants, there is no question here as to whether Defendants received and retained money from Plaintiff. Contrary to Defendants' apparent belief, it is not enough for the maker of a promissory note simply to plead failure of consideration as a defense. The maker is required to establish the claimed affirmative defense through

---

[6] The fact that Carole Lovett did not sign the January 2005, March 2010, and December 2010 Note Modification Agreements does not discharge her obligations under the ETI Notes. The modification agreements specifically state that they do not release or affect the liability of any guarantors of the original ETI Note. As part of her Guaranty Agreement, Carole Lovett assented to, without notice from Plaintiff, any one or more extensions or modifications of the ETI Note.

In addition, the fact that Dunwody and Robert Lovett signed new Guaranty Agreements in 2010 does not discharge Carole Lovett from liability under her ETI Guaranty Agreement, as she was never released from that agreement.

affirmative evidence. Defendants have not done so here. Therefore, the Court finds there was no failure of consideration as to the ETI Note.

The same goes for the ETI Guaranty Agreements. There was no failure of consideration. Consideration for a guarantor's signature is the extension of credit to his principal. Beard v. McDowell, 174 Ga. App. 793, 794, 331 S.E.2d 104, 106 (1985). ETI received the extension of credit for which the parties contracted, and thus there was no failure of consideration.

As part of their failure of consideration argument, Defendants object to the Affidavit of Leslie Rodgers submitted by Plaintiff in support of the amounts owed by Defendants. Defendants first argue that the loan payment history attached to Rodgers' Affidavit is an inadmissible summary statement. Defendants also contend that the affidavit does not fall within the business records exception to the hearsay rule. As part of its reply, Plaintiff filed a Supplemental Affidavit executed by Rodgers.

Defendants' argument with respect to summary statements is based on a case interpreting the Georgia evidentiary code. As the case before the Court is governed by the Federal Rules of Evidence, not the Georgia code, Defendants' argument is rejected. But even assuming the documents are a summary, use of a summary is allowed in federal court. Federal Rule of Evidence 1006 specifically provides that a party "may use a summary, chart, or calculation to prove the

content of voluminous writings . . . that cannot be conveniently examined in court." Fed.R.Evid. 1006.

Defendants' second argument with respect to the affidavit also fails. In order for the business records exception to the hearsay rule to apply, it must be shown that "(A) the record was made at or near the time [of the event] by - or from information transmitted by - someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of the business . . . [and that] (C) making the record was a regular practice of that activity." Fed.R.Evid. 803(6). These conditions can be "shown by the testimony of the custodian or another qualified witness." Id.

Rodgers is a Vice President/Asset Manager of Plaintiff. (Affidavit of Leslie Rodgers, ¶ 2). She is the custodian/keeper of records for Plaintiff with respect to this matter. (Id.) Rodgers attests that the loan documents attached to the affidavit were prepared at the time of the act, transaction, occurrence, or event, or within a reasonable time thereafter, and were made and kept in the regular course of Plaintiff's business. (Id.) She further states that it is Plaintiff's regular course of business to create such documents. (Id.) Rodgers also states that the documents were made by, or from information transmitted by, a person with knowledge of such matters. (Supplemental Affidavit of Leslie Rodgers, ¶ 2). On their face, the affidavits properly authenticate the records being relied upon, and are qualified

for admission under the business records exception.[7] It should also be noted that the Court cannot find, and the Defendants do not point to, any evidence that calls into question the trustworthiness of the documents. *See* Fed.R.Evid. 803(6)(E).

### 3. Failure to Lend Additional Money

Defendants next argue that they should not be required to repay the monies lent by Plaintiff because Plaintiff would not lend them additional money to complete the project. This argument is without merit. Georgia courts have

---

[7] The Northern District of Georgia case cited by Defendants, <u>First Citizens Bank & Trust Co. v. Hwy 81 Venture, LLC</u>, No. 1:10-CV-02126-JEC, 2012 WL 779894, at *1 (N.D. Ga. Mar. 6, 2012), does not alter the Court's finding that the affidavits are admissible.

<u>First Citizens</u> involved promissory notes and guaranties executed in favor of Georgian Bank. The defendants defaulted on the notes and guaranties. Georgian Bank was placed into receivership by the FDIC, and its rights were assigned to First Citizens by the FDIC. <u>Id.</u> at *1.

First Citizens filed a lawsuit against the defendants, seeking the recovery of the amounts owed on the notes and guaranties. In support of its motion for summary judgment, First Citizens submitted the affidavit of First Citizens Senior Vice President Don M. Updegraff. The affidavit set forth the balances claimed by the bank in the lawsuit. The defendants argued that the testimony was not admissible under the business records exception. <u>Id.</u> at *5. The district court found that the defendants were correct with respect to Updegraff's first affidavit, as it failed to demonstrate how he as an officer of First Citizens would have any knowledge of the business practices of Georgian Bank, or how its records were generated or maintained. <u>Id.</u> But First Citizens remedied the problem by filing a supplemental affidavit, which made clear that prior to the closure of Georgian Bank, Updegraff was senior vice president of Georgian Bank and an officer at Georgian Bank with primary day-to-day responsibility for the loans at issue. That status gave him knowledge of how Georgian Bank maintained its account records, and it was sufficient to bring the account records within the business records exception. <u>Id.</u> The problem with Updegraff's first affidavit was that he appeared to be testifying about the business practices and records of a bank (Georgian Bank) for which he did not work. That misunderstanding was cleared up in the second affidavit, as Updegraff testified that he worked for Georgian Bank prior to its closing. <u>First Citizens</u> does not stand for some general proposition that bank officers are not competent to testify about bank records, which is how Defendants seem to have read it.

consistently held that a lender's failure to lend additional sums to a principal does not discharge a guarantor from liability for the amount which was actually advanced by the lender. *See, e.g.,* <u>Georgia Invs. Int'l, Inc. v. Branch Banking & Trust Co.</u>, 305 Ga. App. 673, 676-77, 700 S.E.2d 662, 665 (2010); <u>Hornsby v. First Nat. Bank of Atlanta</u>, 154 Ga. App. 155, 158, 267 S.E.2d 780, 783 (1980).[8]

### 4.   Breach of the Covenant of Good Faith and Fair Dealing

Defendants contend that an issue of fact exists as to whether Plaintiff breached its duty of good faith and fair dealing.

"Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement." <u>Secured Realty & Invs. v. Bank of N. Ga.</u>, 314 Ga. App. 628, 630, 725 S.E.2d 336, 339 (2012). "The implied covenant modifies and becomes part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." <u>Myung Sung Presbyterian Church v. N. Am. Ass'n of Slavic Churches & Ministries</u>, 291 Ga. App. 808, 810, 662 S.E.2d 745, 748 (2008). "Therefore, to prevail on their claim for breach of the

---

[8] The fact Defendants continued to modify the ETI Note even after Plaintiff made it clear that it was not going to advance additional funds also negates this defense.

To the extent Defendants are attempting to allege a breach of contract claim, it will not be considered. Defendants have not asserted a counterclaim at any time during the pendency of this case, and the Court certainly will not consider one at this point.

duty of good faith and fair dealing, [Defendants] must establish that [Plaintiff] owed a contractual obligation." <u>Onbrand Media v. Codex Consulting</u>, 301 Ga. App. 141, 147(2)(c), 687 S.E.2d 168, 174 (2009).

While it is not entirely clear from the response brief, it appears that Defendants are arguing that Plaintiff had a contractual obligation to advance additional money to Defendants to complete the construction project, or alternatively to continue to renew or modify the ETI Note.

As to the latter argument, Defendants have directed the Court to no provision in the ETI loan documents which would impose on Plaintiff a duty to continue to renew or modify the ETI Note. As for the former argument, Plaintiff was not contractually obligated to lend ETI any monies over and above the amounts set out in the loan modifications. ETI chose to modify the ETI Note six times, and each time it reduced the note amount, which in turn reduced the amount Plaintiff was obligated to lend ETI. Defendants have presented no evidence that Plaintiff did not in fact lend the money as obligated. At the end of the day, ETI and Plaintiff were bound by a modified note in the amount of $420,125.16, and Plaintiff met its obligation to fund those amounts. ETI and the individual Defendants did not meet their obligation to pay those amounts back.

Defendants have not shown that Plaintiff committed an independent breach which could form the basis for a breach of the duty of good faith and fair dealing. Thus, this affirmative defense fails.

### 5.    Mitigation of Damages

Defendants also assert the affirmative defense of failure to mitigate damages. This argument is not persuasive. Georgia law is clear that where notes and guaranties contain absolute promises to pay, there is no duty to mitigate damages. *See, e.g.*, Ameris Bank v. Alliance Inv. & Mgmt. Co., LLC, 321 Ga. App. 228, 739 S.E.2d 481, 486 (2013); Big Sandy P'ship, LLC, 313 Ga. App. at 872-73. The ETI Note and the ETI Guaranty Agreements are absolute promises to pay. Plaintiff had no obligation to mitigate its damages.

### 6.    Waiver of Rights

Defendants' final affirmative defense as to the ETI Note involves waiver. Defendants contend that by accepting late payments on the ETI Note, Plaintiff waived its rights pertaining to the timing of the payments made on the note.

Under Georgia law, when parties to a contract depart from the terms of the agreement, reasonable notice must be given of the intention to rely on the exact terms of the agreement before one party may recover against the other for failure to follow the exact terms of the contract. *See* O.C.G.A. § 13-4-4. "For a departure from the terms of a contract to be sufficient to require [notice under O.C.G.A. §

13-4-4], the departure must be mutual and intended, such that the parties have essentially a new agreement concerning the requirements of the original contract." Duncan v. Lagunas, 253 Ga. 61, 62, 316 S.E.2d 747, 748 (1984).

Even assuming Plaintiff accepted late payments under the original 2004 ETI Note, or even the modified notes through modification date March 12, 2010, "evidence of a departure from the terms of previous loans has no bearing upon the outcome of the case sub judice." Holy Fellowship Church of God in Christ v. First Cmty. Bank of Henry County, 248 Ga. App. 372, 373, 545 S.E.2d 164, 165 (2001) (quoting Minor v. C & S Nat. Bank, 177 Ga. App. 115, 117, 338 S.E.2d 466, 468 (1985)). There is no evidence that Plaintiff accepted late payments with respect to the ETI Note as modified by the January 10, 2010 modification, mainly because Defendants did not make any payments. For there to be a jury question as to a mutual departure from the terms of the loan, there would have to be evidence establishing Plaintiff's consent to non-payment of the note. See id.; Newby v. Bank of Pinehurst, 159 Ga. App. 890, 891, 285 S.E.2d 605, 606 (1981) (holding there was no mutual departure when there was no evidence that the bank consented to non-payment of the monthly payments due on the notes). No evidence that Plaintiff agreed to non-payment by course of conduct, that Plaintiff agreed to tolerate Defendants' non-payment, or that Plaintiff intended to forego its rights under the ETI Note has been presented. There is no issue of fact for a

jury to decide. *See* <u>Salahat v. FDIC</u>, 298 Ga. App. 624, 629, 680 S.E.2d 638, 642-43 (2006).[9]

### 7.    Waiver of Defenses by Defendants

The Court also notes that in signing the ETI Guaranty Agreements, the individual Defendants waived "legal or equitable defenses whatsoever to which the undersigned might be entitled, to the extent permitted by law, unless such defenses are based upon the willful misconduct of the Bank." Such waivers are enforceable. <u>Hampton Island, LLC v. Asset Holding Co. 5, LLC</u>, 320 Ga. App. 880, 886, 740 S.E.2d 859, 865 (2013); <u>Core LaVista, LLC</u>, 308 Ga. App. at 795.

### B.    Defenses to Liability - the Lovett Note

As noted above, Plaintiff has established a prima facie case of liability under the Lovett Note. The burden has shifted to Defendants to produce or point to evidence which establishes an affirmative defense. They have not done so. In fact, Defendants do not mention the Lovett Note at all in their 20-page response brief. Their only half-hearted attempt to defend against liability on the Lovett Note is contained in their response to Plaintiff's statement of material facts where they state that the Lovetts were instructed by Plaintiff not to pay while the larger note

---

[9] Defendants also contend that by allowing Defendants to change their plan for the use of the loan funds, Plaintiff waived its rights under the ETI loan documents. But aside from quoting a provision of the Georgia Uniform Commercial Code, Defendants make no actual legal argument as to how Plaintiff's actions resulted in a waiver.

was being resolved and their denial that Plaintiff's acceleration of the note was legal or effective. However, Defendants point to no evidentiary support or specific facts in the record establishing these alleged defenses. Because Defendants have not provided any evidence to support their defenses as to the Lovett Note, summary judgment in Plaintiff's favor on the Lovett Note is warranted.

### C.    Amounts Due

Having concluded that Defendants' asserted affirmative defenses fail, the Court must determine the amounts due under the ETI Note, the ETI Guaranty Agreements, and the Lovett Note. Defendants have not disputed the amounts due, other than to argue that they are not liable for them. Based on the evidence in the record, the Court finds that Plaintiff is entitled to judgment in its favor as follows:

### 1.    ETI Note

Defendants ETI, Dunwody, Robert Lovett, and Carole Lovett are jointly and severally liable to Plaintiff as follows on the ETI Note. As of April 12, 2013, Defendants ETI, Dunwody, Robert Lovett, and Carole Lovett owed $420,125.16 in principal, $9,778.38 in bank fees, and $66,257.24 in interest. (Rodgers Aff. ¶ 18). Interest continues to accrue at a per diem rate of $87.5260 for each day after April 12, 2013 until the ETI Note is paid in full. (Id.) Per diem interest at the rate of $87.5260 from April 12, 2013 to the date of this Order, August 22, 2013,

amounts to $11,640.96. Therefore, Defendants ETI, Dunwody, Robert Lovett, and Carole Lovett are jointly and severally liable to Plaintiff for the principal, interest, and fees on the ETI Note in the amount of $507,801.74.

Plaintiff is also entitled to its collection costs, including attorney's fees, pursuant to O.C.G.A. § 13-1-11.[10] Section 13-1-11(a)(2) provides:

> If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00[.]

The ETI Note allows for the recovery of reasonable attorney's fees, but does not specify a specific percentage. Under O.C.G.A. § 13-1-11, the Court finds that Plaintiff is entitled to 15 percent of the first $500 of principal and interest owed (which is $75) plus 10 percent of the remaining principal and interest owed (which is $49,752.34) for a total award of attorney's fees of $49,827.34.[11]

---

[10] The current version of O.C.G.A. § 13-1-11 applies to contracts entered into on or after July 1, 2011. Because the ETI Note, ETI Guaranty Agreements, and the Lovett Note were executed prior to July 1, 2011, the former version of the statute applies.

[11] This calculation takes into consideration the per diem interest accrued from April 12, 2013 to the date of this Order.

### 2.    Lovett Note

Defendants Robert Lovett and Carole Lovett are jointly and severally liable to Plaintiff as follows on the Lovett Note. As of April 12, 2013, Defendants Robert Lovett and Carole Lovett owed $66,421.85 in principal, $1,242.44 in bank fees, and $11,828.33 in interest. (Rodgers Aff. ¶ 27). Interest continues to accrue at a per diem rate of $16.1442 for each day after April 12, 2013 until the Lovett Note is paid in full. (Id.) Per diem interest at the rate of $16.1442 from April 12, 2013 to the date of this Order, August 22, 2013, amounts to $2,147.18. Therefore, Defendants Robert Lovett and Carole Lovett are jointly and severally liable to Plaintiff for the principal, interest, and fees on the Lovett Note in the amount of $81,639.80.

Plaintiff is also entitled to its collection costs, including attorney's fees, pursuant to O.C.G.A. § 13-1-11. The Lovett Note allows for the recovery of reasonable attorney's fees, but does not specify a specific percentage. Under O.C.G.A. § 13-1-11, the Court finds that Plaintiff is entitled to 15 percent of the first $500 of principal and interest owed (which is $75) plus 10 percent of the remaining principal and interest owed (which is $7,989.74) for a total award of attorney's fees of $8,064.74.[12]

---

[12] This calculation takes into consideration the per diem interest accrued from April 12, 2013 to the date of this Order.

**IV.    CONCLUSION**

Plaintiff's Motion for Summary Judgment (Doc. 27) is granted.

The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendants ETI, Dunwody, Robert Lovett, and Carole Lovett on the ETI Note, jointly and severally, in the amount of:

1.    $420,125.16 for unpaid principal;

2.    $9,778.38 for bank fees;

3.    $77,898.20 for unpaid interest;

4.    $49,827.34 for attorney's fees; and

5.    Post-judgment interest at the statutory rate.

The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendants Robert Lovett and Carole Lovett on the Lovett Note, jointly and severally, in the amount of:

1.    $66,421.85 for unpaid principal;

2.    $1,242.44 for bank fees;

3.    $13,975.51 for unpaid interest;

4.    $8,064.74 for attorney's fees; and

5.    Post-judgment interest at the statutory rate.

**SO ORDERED**, this the 22nd day of August, 2013.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

mbh